1  DAVID J. ZUGMAN, State Bar No. 190818
   BURCHAM & ZUGMAN, A.P.C.
2  964 Fifth Avenue, Suite 300
   San Diego, California 92101
3  Telephone: (619) 699-5931
   Email: dzugman@burchamzugman.com
4          gburcham@burchamzugman.com

5  SINGLETON & ASSOCIATES
   TERRY SINGLETON, State Bar No. 58316
6  GERALD SINGLETON, State Bar No. 208783
   1950 Fifth Avenue, Suite 200
7  San Diego, California 92101
   Telephone:  (619) 239-3225
8  Facsimile:   (619) 702-5592
   Email:       geraldsingleton73@yahoo.com
9                terry@terrysingleton.com

10 Attorneys for Adriana Fernandez

11

12                 IN THE UNITED STATES DISTRICT COURT

13               FOR THE SOUTHERN DISTRICT OF CALIFORNIA

14                  (HONORABLE MARILYN L. HUFF)

15 ADRIANA FERNANDEZ,              )   Case No.    08-cv-00601-H-JMA
                                   )
16        Plaintiff,               )   PLAINTIFF'S OPPOSITION TO DEFENDANTS
                                   )   CARTER, LOERA, IMPERIAL COUNTY
17        v.                       )   SHERIFF'S OFFICE, AND IMPERIAL
                                   )   COUNTY'S MOTION TO DISMISS
18                                 )
   JAMES RAY MORRIS,               )   Date:      July 14, 2008
19 HAROLD CARTER,                  )   Time:      10:30 a.m.
   RAYMOND LOERA,                  )   Judge:     Hon. Marilyn L. Huff
20 COUNTY OF IMPERIAL,             )   Court:     13
   IMPERIAL COUNTY SHERIFF'S       )
21 DEPARTMENT,                     )
   and DOES 1-100, inclusive.      )
22                                 )
          Defendants.              )
23 _____)

24         Plaintiff, Adriana Fernandez, by and through her attorneys, hereby files the following Opposition

25 to Defendants' Motion to Dismiss the Complaint brought pursuant to the non-enumerated portion of

26 Federal Rule of Civil Procedure 12(b).

27

28

1

**TABLE OF CONTENTS**

2   TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   ii

3   I.    INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1

4   II.   EXHAUSTION OF CLAIMS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2

5         A.    Factual Disputes. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2

6         B.    Legal Standard for Motions to Dismiss. . . . . . . . . . . . . . . . . . . . . . . .   3

7         C.    The PLRA Does Not Apply.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3

8         D.    This Motion is Improper. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4

9         E.    Ms. Fernandez's Efforts at Exhaustion Were Timely. . . . . . . . . . . . . . . . . .   5

10        F.    The Sufficiency of Ms. Fernandez's Claim. . . . . . . . . . . . . . . . . . . . . . .   5

11  III.  IMMUNITY CLAIMS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7

12        A.    Qualified Immunity Does Not Apply. . . . . . . . . . . . . . . . . . . . . . . . . . .   7

13        B.    Carter and Loera are not entitled to "discretionary immunity". . . . . . . . . . . . .   11

14        C.    Defendants do not Enjoy Government Code Section 820.8 Immunity. . . . . . . . . .   14

15        D.    The Public Entities are Immune for Prisoner Injuries for The State Law Claims,

16              but Not the Federal Claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   14

17  IV.   STATE LAW CAUSES OF ACTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   15

18        A.    Bane Act. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   15

19        B.    Unruh Act. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   17

20        C.    False Imprisonment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   18

21  V.    CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   18

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**CASES**

*Atlantic Corp v. Twombly*, 127 S.Ct. 1955, 1965 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Barner v. Leeds,* 24 Cal.4th 676 (2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Brandt v. Board of Supervisors*, 84 Cal. App. 3d 601 (1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Bryant v. Sacramento County Jail*, 2008 U.S. Dist. LEXIS 10273,
    **7-8 (Cal CD, February 12, 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Cabesuela v. Browning-Ferris Industries*, 68 Cal.App.4th 101, 80 Cal.Rptr.2d 60 (1998). . . . . . . . . . 15

*Caldwell v. Montoya*, 10 Cal.4th 972 (1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12-13

*City of San Jose v. Superior Court*, 12 Cal. 3d 447 (Cal. 1974). . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Davis v. City of Ellensburg*, 869 F.2d 1230  (9th Cir. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Del Real v. City of Riverside*, 95 Cal. App. 4th 761 (Cal. App. 4th Dist. 2002). . . . . . . . . . . . . . . . . . 7

*Doe 1 v. City of Murrieta*, 102 Cal.App.4th 899 (2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11-12

*Fernelius v. Pierce*, 22 Cal 2d 226 (1943). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Ford v. Ramirez-Palmer*, 301 F.3d 1043 (9th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Gaston v. Colio*, 883 F. Supp. 508 (S.D. Cal. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Hamilton v. Endell*, 981 F.2d 1062 (9th Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Hansen v. Black*, 885 F.2d 642 (9th Cir. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Isbister v. Boys' Club of  Santa Cruz*, 40 Cal. 3d 72 (1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . 17-18

*Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167 (2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Johnson v. State of California*, 69 Cal.2d 782 (1968). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12-13

*Jones v. Bock*, __ U.S. __, 127 S.Ct. 910, 921, 166 L. Ed. 2d 798 (2007). . . . . . . . . . . . . . . . . . . . 4

*Larez v. City of Los Angeles*, 946 F.2d 630 (9th Cir. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Marshall v. County of Los Angeles*, 131 Cal. App. 2d 812 (Cal. App. 2d Dist. 1955). . . . . . . . . . . . 14

*Meehan v. County of Los Angeles*, 856 F.2d 102 (9th Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Nicole M. v. Martinez Unified Sch. Dist.*, 964 F.Supp. 1369 (N.D. Cal. 1997). . . . . . . . . . . . . . . . . 13

*O'Connor v. Village Green Owners Assoc.*, 33 Cal. 3d 790 (1983). . . . . . . . . . . . . . . . . . . . . . . 17-18

*Page v. Torrey*, 201 F.3d 1136 (9th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4

*Patsy v. Board of Regents of Fla.*, 457 U.S. 496, 102 S. Ct. 2557, 73 L. Ed. 2d 172 (1982). . . . . . . . . . 1

*Redman v. County of San Diego*, 942 F.3d 1435 (9th Cir. 1991)(en banc). . . . . . . . . . . . . . . . 8, 10-11

*Rodriguez v. California Highway Patrol*, 89 F. Supp. 2d 1131 (N.D. Cal. 2000).. . . . . . . . . . . . . . . 14

*Saucier v. Katz*, 533 U.S. 194 (2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Schaefer Dixon Assocs. v. Santa Ana Watershed Project Auth.*, 48 Cal. App. 4th 524 (Cal. App. 4th Dist. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Schwenk v. Hartford*, 204 F.3d 1187 (9th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8-10

*Scruggs v. Haynes*, 252 Cal. App. 2d 256 (Cal. App. 1st Dist. 1967). . . . . . . . . . . . . . . . . . . . . . . 6

*Taormina v. Cal. Dept. of Corrections*, 946 F. Supp. 829 (S.D. Cal. 1996). . . . . . . . . . . . . . . . . 17-18

*Tellabs, Inc., v. Maker Issues & Rights, Ltd.*, 127 S.Ct. 2499 (2007). . . . . . . . . . . . . . . . . . . . . . . 3

*Thomkins v. Belt*, 828 F.2d 298 (5th Cir. 1987).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Toscano v. County of Los Angeles*, 92 Cal. App. 3d 775 (Cal. App. 2d Dist. 1979).. . . . . . . . . . . . . . 6

*United States v. Pereira-Salmeron*, 337 F.3d 1148 (9th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . 16

*United States v. Rayo-Valdez*, 302 F.3d 314 (5th Cir. 2002).. . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*United States v, Velasquez-Overa*, 100 F.3d 418 (5th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Wright v. State of California* 122 Cal.App.4th 659 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Wyatt v. Terhune*, 315 F.3d 1108 (9th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

## CONSTITUTIONAL PROVISIONS

U.S. Const., Art. VI. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

## FEDERAL STATUTES

28 U.S.C. § 1997e. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3, 4

41 U.S.C. § 1983. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1-2, 6-7, 14-15

42 U.S.C. § 1915. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

42 U.S.C. § 1997e(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-4

## FEDERAL RULES

Federal Rule of Civil Procedure 12(b).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

## CALIFORNIA STATUTES

Bane Civil Rights Act (Cal. Civil Code § 52.1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 15-17

1

Unruh Civil Rights Act (Cal. Civil Code § 51). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 17-18

2

Cal. Govt. Code § 820.2. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11-12, 14

3

Cal. Govt. Code § 820.8. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

4

Cal. Govt. Code § 844.6(a)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

5

Cal. Gov. Code § 910. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6-7

6

Cal. Gov. Code § 910(e). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

7

Cal. Gov. Code, § 910.8. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

8

Cal. Gov. Code, § 911. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

9

Cal. Gov. Code § 911.6(b)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

10

Cal. Gov. Code § 946.6. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

11

Cal. Gov. Code § 26610. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

12

Cal. Govt. Code § 12900 (California's FEHA). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

13

Cal. Penal Code § 4606. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

14

**CALIFORNIA REGULATIONS**

15

California Code of Regulations, Title 15, § 3084.1(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

16

17

18

19

20

21

22

23

24

25

26

27

28

1

# I.

2

## <u>INTRODUCTION</u>

3      This case arises out of the repeated sexual abuse of Ms. Fernandez and other female inmates by

4   former Deputy Sheriff James Morris.[1]  Ms. Fernandez filed a compliant pursuant to 42 U.S.C. Section

5   1983 against Mr. Morris, then Sheriff Harold Carter, Current Sheriff Raymond Loera, the Imperial

6   County Sheriff's Office, Imperial County, and other Doe Defendants.  Ms. Fernandez also alleged 7

7   other causes of action under state law which are properly before this Court pursuant to the Court's

8   supplemental jurisdiction.

9      Defendants Carter, Loera, the Imperial County Sheriff's Department, and Imperial County

10  (collectively "Defendants") filed a motion to dismiss Ms. Fernandez's case on a variety of grounds.

11  Defendants' motion to dismiss is mistaken from the outset at it argues that this case is governed under

12  the Prison Litigation Reform Act ("PLRA").  [Mtn. to Dismiss at 5-6].  The PRLA only applies to

13  currently incarcerated plaintiffs.  *Page v. Torrey*, 201 F.3d 1136  (9th Cir. 2000).  A substantial port of

14  Defendants' motion to dismiss is apropos of nothing.  Section 1983 does not have an independent

15  exhaustion requirement.  *See Patsy v. Board of Regents of Fla.*, 457 U.S. 496, 516, 102 S. Ct. 2557, 73

16  L. Ed. 2d 172 (1982).  In short, the PLRA does not impose any exhaustion bar to Ms. Fernandez's

17  claims and her Section 1983 claim has no exhaustion requirement at all.

18      Defendants argue that Ms. Fernandez's state law claims are barred because she did not properly

19  exhaust those claims and that the governmental entities have immunity for injuries suffered by

20  prisoners.  [Mtn. to Dismiss, at 6-8].  Defendants argue that Ms. Fernandez's claims also fail on the

21  merits because Defendants Carter and Loera (the Sheriffs) have qualified immunity and did not

22  personally participate in the alleged constitutional violations.  [Mtn. to Dismiss at 9-11].  With respect

23  to the state law claims, Carter and Loera claim that Ms. Fernandez did not sufficiently exhaust her

24  claim by naming Carter or Loera, that Carter and Loera did not personally commit the state law torts.

25  Further, to the extent that Deputy Sheriff Morris (and other deputies) engaged in sexual misconduct

26  with female inmates, the policies and practices which enabled or deliberately ignored that licentiousness

27

28      [1]      Other deputy sheriffs sexually abused other female inmates.

1    was part of the immune discretionary decision-making of the Sheriff.

2        Defendants claim that the California public entities are immune from state law claims regarding

3    prisoner injuries.  [Mtn. to Dismiss, at 12].  Defendants also claim that Ms. Fernandez's state law

4    claims are barred for failure to exhaust.  [Mtn. to Dismiss, at 12-15].

5        Defendants argue that Ms. Fernandez's claim under the Bane Civil Rights Act are void for

6    failure of a threat of violence and the putative omission of a private right of action.  [Mtn. to Dismiss, at

7    15-16].  Defendants make a similar claim for the Unruh Civil Rights Act because the County is not a

8    business establishment and that Ms. Fernandez is not part of a protected class.  [Mtn. to Dismiss, at 16-

9    17].

10        Defendants argue that Ms. Fernandez cannot claim false imprisonment because she is an inmate.

11    [Mtn. to Dismiss, at 17].

12        Finally, Defendants claim that Ms. Fernandez's Section 1983 claims are inadequate.  [Mtn. to

13    Dismiss, at 18-21].

## II.

## EXHAUSTION CLAIMS

**A.    Factual Disputes**

17        Ms. Fernandez has 3 disputes with Defendants' characterization of the exhaustion issues.  First,

18    Defendants claim that Ms. Fernandez did not avail herself to the prison grievance procedure.  Ms.

19    Fernandez cannot say whether Lieutenant Cortez's declaration is correct in saying that there was a stack

20    of grievance forms in the main prisoner area because shortly after Deputy Morris began his campaign of

21    sexual bribery and extortion, Ms. Fernandez was placed into solitary confinement.[2]  When Ms.

22    Fernandez was in solitary confinement, Deputy Morris was the deputy that took her to recreation and

23    was the Deputy that Ms. Fernandez understood to be in charge of her.  Requiring Ms. Fernandez to seek

24    a grievance form from Deputy Morris is obviously futile and prohibitively dangerous to Ms.

25    Fernandez's well-being.  Also, because the sexual bribery and extortion of inmates was widespread, it

---

[2]    Ms. Fernandez disputes Defendants' characterization of why she was put into solitary confinement, but because the reason why Ms. Fernandez was in solitary confinement does not pertain to her causes of action, she will not pursue the point.

1    was untenable to require Ms. Fernandez to file a grievance form which would endanger her physical

2    safety from deputy and inmate alike.

3         Once Ms. Fernandez was transferred to San Diego to the Geo facility in San Diego, she

4    requested grievance forms from the Imperial County Jail, but was told that they were unavailable.[3]

5         Defendants have 2 further arguments.  First, that Ms. Fernandez did not timely file a claim with

6    the County.  Second, that her claims did not name Sheriffs Carter or Loera.  Regarding the first point, as

7    explained in her petition for a late claim, Ms. Fernandez did send a claim form to the County on

8    September 4, 2007, but heard no response.  The attached declaration of David Zugman avers this fact.

9    [Declaration of David Zugman, ¶ ¶ 9, 13].  Regarding the sufficiency of Ms. Fernandez's filings, Ms.

10   Fernandez will address this point after addressing what sort of exhaustion Ms. Fernandez's claims

11   require.

12   **B.    Legal Standard for Motions to Dismiss**

13        In deciding a motion to dismiss, the trial court "must accept all factual allegations in the

14   complaint as true." *Tellabs, Inc., v. Maker Issues & Rights, Ltd.*, 127 S.Ct. 2499, 2509 (2007).  The

15   court must also   resolve all doubts and inferences in the plaintiff's favor, and view the complaint in the

16   light most favorable to the plaintiff. *Id*; *Atlantic Corp v. Twombly*, 127 S.Ct. 1955, 1965 (2007);

17   *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 170-171 (2005).  The burden of proving that

18   plaintiff has submitted a complaint for which no relief may be granted rests with the defendant.  A

19   complaint may <u>not</u> be dismissed simply because the trial court does not believe the allegations

20   contained in the complaint, or that recovery is unlikely.  *See Atlantic Corp*, 127 S.Ct. at 1965.

21   **C.    The PLRA Does Not Apply**

22        The Prison Litigation Reform Act ("PLRA") applies <u>only</u> to suits brought by "a <u>prisoner</u>

23   confined in any jail, prison, or other correctional facility."  42 U.S.C. § 1997e(a) (emphasis added).

24   California Code of Regulations, Title 15, section 3084.1(a) states that it applies to "inmate[s]" and

25

26        [3]    This is sworn to in David Zugman's declaration as he personally participated in this
     process.  [Declaration of David Zugman, ¶¶  6-8].  Should the Court desire a declaration from Ms.
27   Fernandez, she will provide one.  She is currently in drug treatment as a condition of her supervised
     release so Counsel currently has limited access to Ms. Fernandez.
28

1  "parolee[s] under the department's jurisdiction".  The Ninth Circuit holds that ex-prisoners are not

2  "prisoners" within the meaning of the PLRA:

3           [T]he natural reading of the text [of the PLRA] is that to fall within the
             definition of 'prisoner,' the individual in question must be currently
4           detained as a result of accusation, conviction, or sentence for a criminal
             offense . . .  Therefore, we hold that individuals who, at the time they
5           seek to file their civil actions, are detained as a result of being accused of,
             convicted of, or sentenced for criminal offenses are "prisoners" within the
6           definition of 28 U.S.C. § 1997e and 42 U.S.C. § 1915.

7  *Page v. Torrey*, 201 F.3d 1136, 1139 (9th Cir. 2000)

8           Here, Plaintiff was released from the custody of the Bureau of Prisons on March 15, 2008.

9  (Plaintiff's Declaration, ¶ 1.)  Plaintiff filed her Complaint on April 2, 2008.  (Declaration of Attorney

10  David J. Zugman, ¶ 2.)  Accordingly, Plaintiff is not a "prisoner" within the meaning of the PLRA, and

11  the PLRA's exhaustion requirements do not restrict Plaintiff's ability to bring the instant suit.

12          Defendants cannot and do not dispute the fact that Plaintiff was released from custody prior to

13  filing her Complaint, nor do they provide any case law which contradicts the Ninth Circuit's clear and

14  unequivocal holding that ex-prisoners, like Plaintiff, are not subject to the PLRA's exhaustion

15  requirements.  *See Page*, 201 F.3d at 1139.

16  **D.    This Motion is Improper**

17          Defendants cite *Wyatt v. Terhune*, 315 F.3d 1108 (9th Cir. 2003), for the proposition that a

18  motion to dismiss is the proper vehicle for the Court to dismiss unexhausted PLRA cases.  [Mtn. to

19  Dismiss, at 6].  *Wyatt* does not apply because this is not a PLRA case.  Moreover, *Wyatt v. Terhune* has

20  been overruled *sub silencio* as recognized in *Bryant v. Sacramento County Jail*, 2008 U.S. Dist. LEXIS

21  10273, **7-8 (Cal CD, February 12, 2008):

22          Defendants seek dismissal under Rule 12(b) of the Federal Rules of Civil Procedure.
            While the Ninth Circuit has stated that Rule 12(b) is the proper mechanism for resolving
23          questions arising under 42 U.S.C.§ 1997e(a), *Wyatt v. Terhune*, 315 F.3d 1108 (9th Cir.
            2003), the reason underlying that decision has been undermined. The Ninth Circuit
24          found that failure to exhaust was a matter in abatement which should be raised in a
            motion made under "unenumerated Rule 12(b)." [2] *Wyatt*, 315 F.3d at 1119. However, the
25          United States Supreme Court recently clarified  that failure to exhaust is an affirmative
            defense which defendant has the burden of pleading and proving. *Jones v. Bock*,    U.S.
26          , 127 S.Ct. 910, 921, 166 L. Ed. 2d 798 (2007). Federal courts appropriately consider
            affirmative defenses on summary judgment. Here, defendant's motion necessarily
27          requires the court to consider the affidavits and exhibits presented for the purpose of
            proving the absence of exhaustion. Accordingly, the court finds that a motion for

28

summary judgment is the proper mechanism for resolving the question of whether plaintiff satisfied the exhaustion requirement.

Defendants' motions should be considered via a motion for summary judgment and then denied under that procedural vehicle.

**E.    Ms. Fernandez's Efforts at Exhaustion Were Timely**

Defendants argue that Ms. Fernandez's claims should be barred because she did not bring them in a timely fashion.  Ms. Fernandez did submit a timely claim as of September 4, 2007, but never received a response from the Claims Board which is why she submitted a second claim with a petition for a late claim detailing that fact.  [Declaration of David Zugman, ¶¶ 9-13].  Under Government Code Section 911.6(b)(1) the Board is required to allow a late claim when "The failure to present the claim was through mistake, inadvertence, surprise or excusable neglect and the public entity was not prejudiced in its defense of the claim by the failure to present the claim within the time specified in Section 911.2."  Ms. Fernandez sent the claim by mail to the Board, but never heard back which is what prompted her to seek a late claim.  There is no allegation that the public entity was prejudiced by any delay so this would squarely fit into the excusable neglect/inadvertence rubric.[4]

This Court is empowered to decide whether Ms. Fernandez substantially complied with the Claim procedure.  Cal. Gov. Code Section 946.6.  Because Ms. Fernandez filed both a timely claim on September 4, 2007, and a petition for a late claim after she heard no response (which recited the pertinent facts), Ms. Fernandez's claim is timely.

**F.    The Sufficiency of Ms. Fernandez's Claim**

Defendants claim that Ms. Fernandez's state law claims should be barred because she did not name Defendants Carter and Loera as putatively required under California Gov. Code Section 910(e).[5]

---

[4]        On Page 13 of the Motion to Dismiss, Defendants claim that Ms. Fernandez did not allege in her complaint that her claim to the Government Claims Board was timely.  In her petition to file a late claim and in the declaration of David Zugman, Ms. Fernandez states that she sent her claim to the Board on September 4, 2007.  Because September 4, 2007 is within 6 months of Ms. Fernandez's late March to early April abuse by Deputy Morris, her claim was within the 6 month timeliness period.

[5]        Government Code Section 910 does not apply to Section 1983 actions.  *Toscano v. County of Los Angeles*, 92 Cal. App. 3d 775 (Cal. App. 2d Dist. 1979)

1   Defendants overstate California's requirements for the presentation of claims.  *See Scruggs v. Haynes*,

2   252 Cal. App. 2d 256 (Cal. App. 1st Dist. 1967) (claim for damages arising from assault and battery

3   committed by a police officer employed by defendant city complied with the applicable statutes in all

4   respects where, though it was directed to defendant officer and a fellow police officer rather than to the

5   city, it contained all the information required by the statutes and was signed by the claimant.)

6   Government Code Section 910 requires Ms. Fernandez to identify the person causing her injury which

7   she did: Deputy Morris.  It did not require her to identify every person that aided and abetted, enabled

8   and allowed, or failed to restrain Deputy Morris from engaging in his rapacious behavior.

9          Ms. Fernandez also provided a claim to the Imperial County Sheriff's Office detailing what had

10  happened to her.  Assuming that Defendants are correct that there is no difference between Imperial

11  County and the Imperial County Sheriff's Department.  [Mtn. to Dismiss, at 21].  This demonstrates

12  that Ms. Fernandez was not dilatory or incomplete in her efforts at alerting the County to the nature of

13  her claim and enabling the County to take measures to investigate the wrong-doer and compensate the

14  victims.

15         Government Code Section 910 requires substantial compliance.  *See City of San Jose v.*

16  *Superior Court*, 12 Cal. 3d 447, 456 (Cal. 1974).  Substantial compliance occurs so long as the plaintiff

17  alleges all of the statutory elements in Section 910.  In *City of San Jose*, the Court held that for a class

18  action to be maintained it was not required that each class member fill out a Government Claim form,

19  but simply that the class itself have one.  *Id.* at 457.  So long as there is some compliance with the

20  purpose of Section of 910, the question for this Court becomes "Is there sufficient information

21  disclosed on the face of the filed claim to reasonably enable the public entity to make an adequate

22  investigation of the merits of the claim and to settle it without the expense of a lawsuit?"  *Id.* at 456.

23  Plainly, the averments of Ms. Fernandez allowed the County to investigate the sexual misconduct at the

24  Imperial County Jail and to settle it short of a lawsuit.

25         Finally, Ms. Fernandez's claim is not barred so long as the claim she presented put the "public

26  entity on notice both that the claimant is attempting to file a valid claim and that litigation will result if

27  the matter is not resolved." *Del Real v. City of Riverside*, 95 Cal. App. 4th 761, 769 (Cal. App. 4th

28

1  Dist. 2002) (citations omitted).[6]

2  ## III.

3  ## IMMUNITY CLAIMS

4  **A.     Qualified Immunity Does Not Apply**

5       To determine whether qualified immunity applies, the threshold question is whether, in the light

6  most favorable to the party asserting injury, the facts show an officer's conduct violated a constitutional

7  right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  If no constitutional right was violated, immunity

8  attaches and the inquiry ends. *Id.*  If a constitutional right would have been violated were a plaintiff's

9  allegations established,  the next step is to ask whether the right was clearly established in light of the

10  context of the case.  *Id.*  Finally, the contours of the right must be clear enough that a reasonable officer

11  would understand whether his or her acts violate that right.  *Id.* at 202.

12       Defendants claim that Sheriffs Loera and Carter cannot be personally liable under section 1983

13  because they are entitled to qualified immunity, and because they did not personally participate in the

14  alleged constitutional violations.  [Mot. To Dismiss, at 9-11]. Defendants assert that because Plaintiff's

15  complaint sets forth only conclusory allegations and Defendants Loera and Carter were unaware of

16  Morris' actions, neither Defendant engaged in conduct that violated Plaintiff's constitutional rights.

17  Defendants also assert that the claims against Defendants Loera and Carter must be dismissed because

18  they are based entirely on their titles and general abilities to control employees, and that Plaintiff has

19  not alleged facts to show Defendants Loera or Carter were personally involved in the deprivation of

20  Plaintiff's constitutional rights.  [Mot. to Dismiss, at 10-11].

21       Neither Defendant Loera or Carter are shielded from personal liability based on the

22  extraordinary facts of this case as set forth in Plaintiff's complaint.  Plaintiff has alleged with specificity

23  that Defendants Loera and Carter are personally responsible for the constitutional deprivations suffered

24  _____

25       [6]     The Board did not object that Ms. Fernandez's claim was somehow deficient. *See*

26  *Schaefer Dixon Assocs. v. Santa Ana Watershed Project Auth.*, 48 Cal. App. 4th 524, 532 (Cal. App. 4th Dist. 1996)  "If a claim does not substantially comply with Government Code section 910, the

27  governmental board must give notice of the deficiency within 20 days. ( Gov. Code, § 910.8.) If the board fails to give notice of the insufficiencies or omissions in a defective claim, the entity waives any

28  defenses as to the sufficiency of the claim. ( Gov. Code, § 911.)"

1   by Plaintiff because they were responsible for the de facto policy and/or custom within ICJ that allowed

2   the sexual abuse of female inmates by male guards, and because their willful deliberate indifference

3   with regard to supervising ICJ guards and employees, training ICJ guards and employees, responding to

4   the abuse that was occurring, and generally satisfying their statutory duties to provide female inmates a

5   safe environment inside ICJ, led to Defendant Morris and other ICJ guards and/or employees violating

6   the constitutional rights of Plaintiff.   [Complaint, at 7-8].

7        As previously set forth, this case is not at all about a single, isolated incident of misconduct by

8   one officer (Morris) within ICJ.  Were this the case, Defendants Loera and Carter indeed might be

9   entitled to qualified immunity.  To the contrary, what existed here was a jail environment that, over a

10  lengthy period of time, was replete with sexual abuse of multiple female inmates by multiple male

11  guards, all done in a conspicuous manner and known to other inmates and guards and/or employees

12  while it was occurring.  [Complaint, at 6].   Under the extraordinary and disturbing facts of this case,

13  Defendants Loera and Carter, who are alleged to have been a cause of the misconduct of Morris and

14  other guards and/or ICJ employees through their de facto policy and/or custom allowing such conduct

15  and through their willful deliberate indifference to the rights of Plaintiff, cannot be protected by

16  qualified immunity.

17       There can be no doubt that Defendant Morris, who has admitted to having sexual relations with

18  Plaintiff and at least two other ICJ female inmates, is not entitled to qualified immunity.  *See, e.g.,*

19  *Schwenk v. Hartford*, 204 F.3d 1187, 1197 (9th Cir. 2000)(where guards themselves are responsible for

20  the rape and sexual abuse of inmates, an act which is "deeply offensive to human dignity," qualified

21  immunity offers no shield).  Defendants Loera and Carter's attempt to shield themselves from liability

22  through qualified immunity is likewise unavailing.  A supervisor may be liable if there exists a

23  sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.

24  *Redman v. County of San Diego*, 942 F.3d 1435, 1446 (9th Cir. 1991)(en banc).  "Supervisory liability

25  exists even without the overt personal participation in the offensive act if supervisory officials

26  implement a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is the

27  'moving force of the constitutional violation.'"  *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir.

28  1989)(quoting *Thomkins v. Belt*, 828 F.2d 298, 303-04 (5th Cir. 1987)).

1    Plaintiff specifically alleged in her complaint that Defendants Loera and Carter were responsible

2    for the de facto policy and/or custom that allowed Morris and other ICJ guards to sexually abuse female

3    inmates.  Plaintiff alleged that this de facto policy and/or custom is exemplified by Defendants Loera

4    and Carter's failure to supervise the ICJ guards and/or employees who were guarding these females and

5    committing these abusive acts, their failure to train ICJ guards and/or employees to prevent this sort of

6    sexual abuse, their failure to respond to this abuse when it was obvious that it was occurring, and their

7    overall failure to exercise any meaningful control over this jail that they were charged by state law to

8    keep.  *See* Cal. Gov. Code § 26610, Cal. Penal Code § 4606, *Brandt v. Board of Supervisors*, 84 Cal.

9    App. 3d 601 (1987);  [Comp. at 6-8].

10    Plaintiff also alleged that Defendants are personally responsible because their failure to

11    supervise and train the ICJ guards and/or employees in a manner so as to avoid this misconduct caused

12    the constitutional violations set forth herein and was so inadequate that it represents their deliberate

13    indifference to the rights of Plaintiff.  A pretrial detainee establishes a violation of the constitutional

14    right to personal security by demonstrating either that prison officials acted with deliberate indifference

15    or that their conduct was so reckless as to be tantamount to a desire to inflict harm.  *Ford v. Ramirez-*

16    *Palmer*, 301 F.3d 1043 (9th Cir. 2002).  A finding of deliberate indifference necessarily precludes a

17    finding of qualified immunity.  *Hamilton v. Endell*, 981 F.2d 1062, 1066 (9th Cir. 1992).  The Ninth

18    Circuit had held that a constitutional violation may arise from training or supervision where the training

19    or supervision is sufficiently inadequate as to constitute deliberate indifference to the rights of the

20    persons affected.  *Davis v. City of Ellensburg*, 869 F.2d 1230, 1235  (9th Cir. 1989).  The "shield that

21    qualified immunity provides is limited to those officials who are either unaware of the risk or who take

22    reasonable measures to counter it," *Schwenk*, 204 F.3d at 1197.

23    Plaintiff alleged that Defendants Loera and Carter were deliberatively indifferent to Plaintiff's

24    constitutional rights by failing to supervise and train ICJ guards and/or employees so that  females

25    inmates, who Defendants Loera and Carter knew were guarded by males, were not sexually exploited

26    by these male guards.  Plaintiff also specifically pled that these Defendants were on actual or

27    constructive notice that these omissions --their failure to supervise and train their ICJ guards and/or

28    employees in relation to handling female inmates -- would likely result in a constitutional violation.

1    Plaintiff further alleged that Defendants Loera and Carter failed to respond to these illegal and

2    unconstitutional acts once they were known to be occurring, including attempting to conceal this

3    behavior.  These allegations which are presumed true for this motion and if proven at trial would

4    establish personal liability for Defendants Loera and Carter because of their deliberate indifference to

5    the rights of Plaintiff.

6         The Ninth Circuit's decision in *Redman* supports Plaintiff's position as to Defendants Loera and

7    Carter. Plaintiff in *Redman* alleged that the San Diego County Sheriff was liable for sexual assaults

8    upon him by other inmates because the Sheriff allowed the county jail to be overcrowded which

9    required prisoners to be placed in improper detention areas within the jail. *Id.* at 1447.  The Ninth

10   Circuit held that the Sheriff could not invoke qualified immunity, as a reasonable jury could find that

11   the Sheriff was deliberately indifferent to Redman's personal security rights by allowing overcrowding

12   of the jail and that he reasonable should have known of the overcrowding which he approved of and

13   which was a moving force behind the rape of Plaintiff.  *Id.*

14        The instant case presents even a stronger case for Sheriff liability than *Redman*.  In *Redman*, the

15   assaults were at the hands of inmates and occurred over the period of just a few days, were limited to

16   one victim, and were alleged to have been caused by the general problem of jail overcrowding which

17   affects jails and prisons throughout the nation.  Here, we have sexual assaults that were alleged to be

18   perpetrated by ICJ guards, are alleged to have occurred over a protracted period, are alleged to have

19   involved multiple guards and multiple female victims, and are alleged to have been committed in a

20   conspicuous area and to were well known throughout ICJ to guards and/or employees and inmates.

21   Additionally, Plaintiff alleges that Defendants Loera and Carter were directly responsible for this

22   misconduct by their deliberate indifference to the rights of Plaintiff through their lack of supervision,

23   training, and response to this "deeply offensive," *Schwenk v. Hartford*, 204 F.3d at 1191, environment

24   that existed at ICJ not for days, but for weeks and  months.  If the en banc Ninth Circuit denied

25   qualified immunity under the facts of Redman, this Court must reach the same decision under the

26   significantly more egregious facts of this case.

27        In sum, construing all inferences in favor of Plaintiff, *see Meehan v. County of Los Angeles*, 856

28   F.2d 102, 106 (9th Cir. 1988), a reasonable jury certainly could conclude based on the allegations set

1  forth in the complaint that Defendants Loera and Carter, the individuals directly responsible for the

2  Plaintiff's safekeeping and in charge of the policies and customs of ICJ, were personally responsible for

3  the de facto policies and/or customs within ICJ that approved of these deprivations of Plaintiff's

4  constitutional rights and that they were deliberately indifferent to the rights of Plaintiff through their

5  omissions.  Because numerous genuine issues of material fact exist as to these bases of liability for

6  Defendants Loera or Carter, Defendants' motion to dismiss based on qualified immunity must be

7  denied.  If this Court agrees with Defendants that the complaint contains insufficient allegations to

8  establish liability on the part of Defendants Loera or Carter in their individual capacities, Plaintiff

9  would ask for leave to amend her complaint.

10  **B.    Carter and Loera are not entitled to "discretionary immunity"**

11        Defendants are not entitled to "discretionary acts" immunity because the acts alleged in

12  plaintiff's complaint (*to wit*, the failure to exercise reasonable care in supervising and controlling the

13  DOE Defendants who caused plaintiff's injury) did not involve planning or policy making decisions

14  but, rather, involved the basic operational functions of government.  Accordingly, those acts were

15  "ministerial", not "discretionary", within the meaning of Cal. Govt. Code § 820.2.

16        Cal. Govt. Code § 820.2 creates "discretionary act immunity" for governmental employees.  *See,*

17  *inter alia, Doe 1 v. City of Murrieta*, 102 Cal.App.4th 899, 911 (2002).  The purpose of this immunity

18  is to insulate governmental employees from liability for policy-making level decisions.  *City of*

19  *Murrieta*, 102 Cal.App.4th at 912.  Ordinary acts carried out by governmental actors such as routine

20  supervision of subordinate employees are considered "ministerial" and do not fall within the scope of

21  this immunity.  *Id.*

22        As used in Cal. Govt. Code § 820.2, the term "discretionary acts" is a term of art.  Accordingly,

23  "'not all acts requiring a public employee to choose among alternatives entail the use of 'discretion'

24  within the meaning of [Government Code] section 820.2.'" *City of Murrieta*, 102 Cal.App.4th at 911

25  (quoting *Barner v. Leeds,* 24 Cal.4th 676, 684-85 (2000).  Indeed, "'it would be difficult to conceive of

26  any official act, no matter how directly ministerial, that did not admit some discretion in the manner of

27  its performance, even if it involved only the driving of a nail.'" *City of Murrieta*, 102 Cal.App.4th at

28

1    911, quoting *Johnson v. State of California*, 69 Cal.2d 782, 788 (1968) (emphasis added).

2            In considering where to draw the line between ministerial and discretionary acts, the California

3    Supreme Court drew a distinction between the "planning" and the "operational" functions of

4    government.  *Caldwell v. Montoya*, 10 Cal.4th 972, 981 (1995), quoting *Johnson*, 69 Cal.2d at 793-

5    794.)  "Immunity is reserved for those 'basic policy decisions [which have] . . . been [expressly]

6    committed to coordinate branches of government' and as to which judicial interference would thus be

7    'unseemly.'" *Caldwell*, 10 Cal.4th at 981, quoting *Johnson*, 69 Cal.2d at 793 (emphasis added).

8    However, "there is no basis for immunizing lower-level, or 'ministerial,' decisions that merely

9    implement a basic policy already formulated."  *Id.*, (quoting *Johnson*, 69 Cal.2d at 796.

10            Here, plaintiff alleges that Defendants, in their capacity as the supervisory employees, failed to

11    properly supervise their subordinate employees, including Defendant Morris.  Plaintiff's allegations

12    involve Defendants' failure to implement a basic policy that has already been formulated: *to wit*, that

13    supervisory employees must exercise reasonable care in supervising their subordinates.  Unless

14    Defendants are claiming that they made a policy decision to the effect that supervisory employees of the

15    Imperial County Sheriff's Office would no longer be responsible for supervising the acts of their

16    subordinates, or that sexual contact between employees of the Department and inmates was permitted,

17    Defendants' are not immune from the instant suit.  Accordingly, Defendants act and/or omissions in

18    failing to reasonably supervise and control their subordinate employees, including Defendant Morris,

19    were ministerial acts which are not entitled to immunity under Cal. Govt. Code § 820.2.

20            Finally, to the extent Defendants argue that they should be granted immunity because they were

21    not personally involved in supervising the DOE Defendants, and/or that they were not informed of the

22    repeated sexual contact between Sheriff's Department employees and inmates at the Imperial County

23    Jail, this is a factual determination which will require additional discovery to confirm or disprove.

24    Accordingly, it should be brought in the form of a motion for summary judgment, and should not be

25    made until after Plaintiff has had the opportunity to conduct discovery and determine exactly what each

26    Defendant (Carter and Loera) knew about the repeated sexual misconduct committed by their

27    subordinate employees at their jail.

28

1      State and federal case law on this issue does not support Defendants'position that the failure to

2   adequately supervise a subordinate employee is a policy-making decision which should be entitled to

3   discretionary acts immunity.  In *Caldwell v. Montoya*, 10 Cal.4th 972, plaintiff, a school superintendent,

4   sued members of the school board on the grounds that they had violated California's FEHA (Cal. Govt.

5   Code § 12900, *et seq.*) by voting not to renew his contract.  *Caldwell*, 10 Cal.4th at 976-77.  The

6   Supreme Court noted that the "historical basis [for granting immunity to the discretionary acts of public

7   officials] was that fear of civil lawsuits might deter officials from the zealous and unflinching discharge

8   of their public duties."  *Id*. at 979.  The Court then held that the school board members were entitled to

9   discretionary immunity for the decision not to retain the school superintendent because "the decision

10  about who should serve as superintendent of a school district" was one of "vital public interest" that

11  had been "'expressly entrusted to a coordinate branch of government' at its highest level."  *Id*. at 982–

12  83, quoting *Johnson*, 69 Cal.2d 793.  In so doing, the Court made clear that its reasoning was based

13  upon the importance of the position of school superintendent.  "The superintendent . . . is the district's

14  foremost appointed official, with primary responsibility for representing, guiding, and administering it.

15  The governing board's choice about who should occupy this crucial post is therefore a peculiarly

16  sensitive and subjective one, with fundamental policy implications."  *Id*. at 983 (citations omitted).

17  This decision does not imply that any hiring or retention decision by a public employer is entitled to

18  discretionary immunity; to the contrary, the Court's reasoning indicates that only hiring and retention

19  decisions for very high-level posts would be entitled to immunity.  The decision to hire, supervise,

20  retain, and control a prison guard does not meet the requirements set forth in *Caldwell*.

21      Finally, the case of *Nicole M. v. Martinez Unified Sch. Dist.*, 964 F.Supp. 1369 (N.D. Cal.

22  1997), also fails to advance Defendants' position.  There, this Court held that a school principal was

23  entitled to discretionary immunity for his decisions concerning the appropriate amount punishment for

24  students who were sexually harassing plaintiff.  *Id*. at 1389-90.  While this case is not binding authority,

25  even if it were, nothing in its language supports the proposition that the supervision of a subordinate

26  employee is anything other than a ministerial act.

27  **C.    Defendants do not Enjoy Government Code Section 820.8 Immunity**

28      Defendants Carter and Loera assert that they are immune from suit because they did not

1    personally participate in Deputy Morris's deviation.  This argument is foreclosed by California case

2    law.  *Fernelius v. Pierce*, 22 Cal 2d 226 (1943) (Superior having power and duty of removal and

3    negligently failing to discharge known unfit subordinate is liable for torts of subordinate); *see also*

4    *Marshall v. County of Los Angeles*, 131 Cal. App. 2d 812, 814 (Cal. App. 2d Dist. 1955)  Ms.

5    Fernandez is alleging that Carter and Loera were on actual and constructive notice of the continual,

6    repeated, and egregious violations of Ms. Fernandez's and other inmates' rights precisely because of

7    how prevalent, brazen, and open the problem was.  Section 820.8 does not immunize in this instance.

8    Finally under California law, government defendants have the burden of proving that the actions of

9    government employees are within the scope of statutory immunity and such "a showing was not and

10   could not have been made by [the defendant] at the demurrer stage," and "it therefore would [have

11   been] error to sustain [the defendant's] demurrer based on Government Code section 820.2"  *Rodriguez*

12   *v. California Highway Patrol*, 89 F. Supp. 2d 1131, 1138 (N.D. Cal. 2000) (quotation omitted).

13   **D.    The Public Entities are Immune for Prisoner Injuries for The State Law Claims,
            but Not the Federal Claims**

14
15          Defendants correctly observe that Cal. Government Code § 844.6(a)(2) holds that a public entity

16   is not liable for any injury to a prisoner.  However, this immunity applies only to <u>state</u> statutory law; it

17   does apply to statutory causes of action, particularly those brought pursuant to Title 42 U.S.C. § 1983

18   ("section 1983").

19          Plaintiff brings suit against the County of Imperial (and Defendants Carter and Loera, in their

20   official capacities) under the federal civil rights act contained in section 1983.  The Supremacy Clause

21   of the United States Constitution long ago established that federal law takes precedence over state law.

22   U.S. Const., Art. VI.  Section 1983 contains <u>no</u> immunity provision for public entities in cases where

23   the Plaintiff is a prisoner.  Moreover, Defendants cite <u>no</u> case law to support this proposition, and

     Plaintiff is aware if none.

24
25          The two cases cited by Defendants are do not support their position.  Indeed, the initial case

26   cited by Defendants, *Wright v. State of California*, 122 Cal.App.4th 659, 671-672 (2004),  strongly

27   supports Plaintiff.  In *Wright*, the plaintiff filed six causes of action, four based on state law and two

28   based on federal law.  *Id* at 663.  The state of California demurred to the plaintiff's <u>state</u> causes of

1   action based upon public entity immunity, but did <u>not</u> demur to his <u>federal</u> causes of action on this

2   basis. *Id* at 664.  The court sustained the demurrer to the <u>state</u> causes of action only based upon public

3   entity liability. *Id* at 671-72.

4         Defendant's second case, *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991), is

5   similarly unavailing.  The passage cited by the Defendants stands only for the proposition that, under

6   section 1983, a senior official (such as a police chief or sheriff) may be sued in his or her official

7   capacity; such a suit is tantamount to a suit against the public entity itself. *Id*.  Nowhere, however, does

8   *Larez* suggest that a suit brought by a prisoner against a public entity would not be permitted under

9   section 1983.  Indeed, such a section would run afoul of the Supremacy Clause, as a state may not enact

10  a law which abrogates or contradicts a law enacted by the federal government.

11        Accordingly, Defendants' argument is without merit and should be rejected.

12  **IV.**

13  **<u>STATE LAW CAUSES OF ACTION</u>**

14  **A.**    **Bane Act**

15        Defendants assert that Plaintiff has failed to state a claim against Defendants under the Bane

16  Civil Rights Act (Cal. Civil Code § 52.1, et seq), because she has not "alleged that Morris used violence

17  or threats of violence to interfere with her federal Constitutional rights," and because she has not

18  alleged that Defendants Carter of Loera personally threatened, intimidated, or coerced her into engaging

19  in sexual activity with Morris." [Motion to Dismiss, at 15-16].  Neither argument has merit.

20        To state a cause of action under section 52.1, there must be either violence or intimidation by

21  threat of violence. *Cabesuela v. Browning-Ferris Industries*, 68 Cal.App.4th 101, 111, 80 Cal.Rptr.2d

22  60 (1998).  Speech alone is insufficient to support such an action, except upon a showing that the

23  speech itself threatens violence against a specific person or group of persons, the person or group of

24  persons against whom the speech is directed "reasonably fears that, because of the speech, violence will

25  be committed against them or their property and that the person threatening violence has the apparent

26  ability to carry out the threat."  Cal. Civil Code § 52.1(j).

27        At the outset, this Court should note that Defendants incorrectly construe Plaintiff's complaint

28  in their argument.  Plaintiff did not allege in her complaint only that Morris controlled her recreation

15

1   time in order to force her to have sex with him.  While this was one allegation in the complaint and

2   indeed was a tool that Morris employed to sexually abuse Plaintiff, Plaintiff also alleged that Morris

3   made it clear that if she failed to acquiesce to his demands, he would "hurt" her, [Complaint, at 2], and

4   she would receive harsher treatment while in custody.  [Complaint, at 5].  The threats made to Plaintiff

5   by Morris were hardly limited to the amount of recreation time she would receive while at ICJ.

6        Plaintiff pled both violence, and intimation by threat of violence, in her complaint.  As to the

7   use of violence, Plaintiff alleged that in order not to be harmed by Morris or to have her time in custody

8   made more punitive by him, she consented to his sexually abuse of her on numerous occasions.  While

9   Defendants apparently do not believe that a male prison guard with syphilis who coerces a female

10  inmate into having sexual relations with him on numerous occasions and gives her syphilis does not

11  commit a violent act upon this female, this is not a tenable position.  *Cf. United States v. Pereira-*

12  *Salmeron*, 337 F.3d 1148, 1154 (9th Cir. 2003) (holding that Virginia statute criminalizing an adult

13  having sex with a child under age fifteen was a crime of violence for purposes of the Guidelines even

14  though there was no force required because, quoting *United States v, Velasquez-Overa*, 100 F.3d 418,

15  422 (5th Cir. 1996), such crimes typically are "perpetrated by an adult upon a victim who is not only

16  smaller, weaker, and less experienced, but is also generally susceptible to acceding to the coercive

17  power of adult authority figures."); *United States v. Rayo-Valdez*, 302 F.3d 314, 316 (5th Cir.

18  2002)(holding that sexual abuse of a minor is a crime of violence whether force is used or not).

19       Additionally, Plaintiff asserted in her complaint that Morris used threats of violence to interfere

20  with her federal Constitutional rights.  Plaintiff alleged that Morris told her that unless she agreed to

21  have sex with him (a threat of violence through his sexual abuse of her), he would interfere with her

22  constitutional rights during her stay at ICJ by either harming her and making her stay in custody more

23  difficult.  This allegation is sufficient to state a claim under Cal. Civil Code § 52.1, et seq..  Deputy

24  Morris had a position of authority which made voluntary consent by Ms. Fernandez impossible.  There

25  is an obvious power imbalance between Deputy Morris and Ms. Fernandez which makes Deputy

26  Morris's advances inherently coercive and should be considered as a threat of violence.

27       As to Defendants' claim that they are not liable because they personally did not threaten,

28  intimidate, or coerce Plaintiff into having sexual relations with Morris, this argument is of no moment.

1   As is addressed in the qualified immunity section of this reply, Plaintiff has alleged that Defendants

2   Loera and Carter acted with a deliberate indifference to the constitutional rights of Plaintiff by failing to

3   supervise, failing to train, and failing to control what went on in their jail, and that this indifference

4   caused the sexual abuse alleged herein.  Plaintiff also has alleged that these Defendants were

5   responsible for the de facto policy or custom that allowed this sort of treatment of female prisoners by

6   guards at ICJ.  If Defendants' qualified immunity arguments are denied by this Court, they also are

7   liable under section 52.1.

8   **B.     Unruh Act**

9           Defendants move to dismiss Plaintiff's Unruh Act claim on the ground that the Imperial County

10  Jail is not a "business establishment" within the meaning of Cal. Civil Code § 51.  In support of its

11  argument, Defendants cite *Taormina v. Cal. Dept. of Corrections*, 946 F. Supp. 829, 834 (S.D. Cal.

12  1996), in which Judge Brewster found that a prison does not qualify as a business entity under section

13  51.  *See also Gaston v. Colio*, 883 F. Supp. 508, 509 (S.D. Cal. 1995) (Judge Brewster again

14  concluding that a prison not covered by section 51).  Plaintiff respectfully disagrees with the

15  conclusions in *Taormina* and *Colio* and submits that ICJ indeed is a "business establishment" within

16  the meaning of section 51.

17          In interpreting section 51, the California Court of Appeal has stated that the word "business"

18  embraces everything about which one can be employed, and it is often synonymous with calling,

19  occupation or trade, engaged in for the purpose of making a livelihood or gain. *O'Connor v. Village*

20  *Green Owners Assoc.*, 33 Cal. 3d 790, 795 (1983).  The Court of Appeal agreed that this term was used

21  in the "broadest sense reasonably possible." *Id.*  "The Unruh Act covers "all" business establishments

22  'of every kind whatsoever,' and the Legislature has never added any exemption, exception, or

23  restriction. We are not free to import one from another law."  *Isbister v. Boys' Club of Santa Cruz*, 40

24  Cal. 3d 72, 84 (1985).

25          While Judge Brewster has ruled that "business establishments" do not include a prison because

26  "prisoners are not engaged in a calling, occupation or trade for purposes of making a livelihood or

27  gain," *Taormina*, 946 F. Supp at 834, Plaintiff submits that this is not the proper way to analyze this

28  issue.  Instead of looking as to whether inmates are engaged in an occupation or trade within the

1  insitution where they are held, this Court should look to see if the jail itself is a "business

2  establishment" under section 51.  It is.  Just like a Boys' Club, *see Isbister*, 40 Cal. 3d at 84, or a

3  homeowners association, *see O'Connor*, 33 Cal. 3d at 795, are considered to be business establishments

4  within the meaning of section 51, so is Imperial County Jail for the employees who work there.  While

5  ICJ inmates may not be "engaged in a calling, occupation or trade for purposes of making a livelihood

6  or gain," *Taormina*, 946 F. Supp at 834, there are numerous persons within ICJ who are and ICJ should

7  qualify as a "business establishment" under Cal. Civil Code section 51.

8  **C.     False Imprisonment**

9         Ms. Fernandez will not pursue the false imprisonment claims further and consents to the

10  dismissal of the false imprisonment cause of action.

11                                          **V.**

12                                     **CONCLUSION**

13         For the reasons set forth herein above, Plaintiff respectfully requests that this Court deny

14  Defendant's motion in its entirety for lack of a proper procedural vehicle.  If this Court considers the

15  motion, then Ms. Fernandez asks that only her false imprisonment cause of action be dismissed.

16                              Respectfully submitted this 30th day of June, 2008

17

18

19                    By:   /s/  David Zugman
                            **DAVID ZUGMAN**
20                          Burcham & Zugman
                            Attorneys for Plaintiff
21

22                    By:   /s/  Gerald Singleton
                            **GERALD SINGLETON**
23                          Singleton & Associates
                            Attorneys for Plaintiff
24

25

26

27

28

                                          18                              08-cv-00601-H

1

<u>PROOF OF SERVICE</u>

2

I, the undersigned, declare that:

3

1. I am over eighteen (18) years of age; am a resident of the County of San Diego, State of

4

California; and my business address is 964 Fifth Avenue, Suite 300, San Diego, California, 92101-5008.

5

2. I am effecting service of PLAINTIFF'S RESPONSE TO DEFENDANTS MOTION TO

6

DISMISS on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them:

7

J. Scott Tiedemann
5701 N. West Avenue

8

Fresno, CA 93711

9

3.      I hereby certify that I have mailed the foregoing, by United States Postal Service to the following non-EFC participants in this case:

10

1. N/A

11

12

to the last known address, at which place there is delivery service of mail from the United States Postal Service.

13

I declare under penalty of perjury that the foregoing is true and correct.

14

Executed on June 30, 2008.

15

<u>S/David Zugman</u>

16

DAVID J. ZUGMAN

17

18

19

20

21

22

23

24

25

26

27

28